BOWEN et al. v. SIZER et al.

(District Court, S. D. New York. March 25, 1899.)

1. SHIPPING—DEMURRAGE—MARITIME RULES—CONSTRUCTION.

Maritime rule 5 provides that the demurrage charge for delay of a vessel discharging a lumber cargo shall be at the rate of 15 cents per M. feet, board measure, of entire cargo delivered. *Held* that, in the absence of clear proof of a change in the custom, seven-eighths inch dressed boards will be treated as inch lumber, in determining the amount of the demurrage chargeable.

2. SAME.

A special provision of a charter party that the freight on the dressed lumber shipped should be subject to a deduction of one-fifth cannot extend

to the construction of maritime rules relating to demurrage, so as to entitle the consignee to a deduction in measurement for dressed lumber in computing the demurrage due, except on clear evidence that it was so intended.

3. SAME.

Where two bills of lading were given requiring delivery of part of a cargo at different ports, they constitute independent contracts, and hence the consignee was entitled, under maritime rule 4, to one full calendar day after the vessel's arrival at the most distant port to furnish a berth for discharge before being liable for demurrage.

4. SAME.

A vessel is not ready to discharge, within maritime rule 5, regulating the length of time within which a consignee of lumber should receive it, without liability for demurrage, and requiring him to receive, in questionable weather, "if the vessel is ready to discharge," where the stevedores refused to work on account of rain.

In Admiralty. Demurrage.

Alexander & Ash, for libelants.
Conway & Westbrook, for respondents.

BROWN, District Judge. In the absence of any stipulated lay days, the parties have agreed that the rules established by the maritime association of this port in reference to the time for finding a berth and the rate of delivery of Southern pine should govern in this case.

Rules 4 and 5 provide that the consignee shall have "one full calendar day" after the vessel reports arrival, in which to furnish a berth for discharge, and allow a consignee for receiving cargo "one running day (Sundays and legal holidays excepted) for each 25,000 feet of lumber 1½ inches in thickness or less," and also require the consignee to "receive cargo in questionable weather, if vessel is ready to discharge."

Rule 7 provides that the charge for demurrage shall be "at the rate of 15 cents per 1,000 feet board measure of entire cargo delivered."

In the present case there were two bills of lading given by the vessel for delivery of lumber to the defendants as consignees; one at the port of New York, "101,194 feet dressed lumber more or less, 90,770 feet rough lumber, one-fifth off for dressed"; the other described the vessel as bound for Yonkers, New York, and was for the delivery of "142,768 feet dressed lumber more or less, one-fifth off for dressed."

On delivery the cargo was measured. The rough lumber turned out 93,102 feet, being an inch thick; the dressed lumber was seven-eighths of an inch thick, and reckoning that as an inch for the purpose of measurement, turned out 243,793 feet. The dressed lumber, therefore, according to this measurement turned out 869 feet less than the feet described in the bill of lading, and the rough lumber 2,332 feet in excess; or taking the lumber altogether there were 1,463 feet more than the aggregate feet stated in the bills of lading, disregarding the provision for one-fifth off.

There was no difference between the parties as to the amount of freight to be paid, or the mode of computing it. In the bill of lading it was stated at $1.90 per thousand feet. From this price one-fifth was deducted, and with this deduction the computation was made

upon the feet as measured, reckoning for the dressed lumber the seven-eighths of an inch thickness as a full inch. $500 was paid on account of the freight, leaving $47.46 unpaid. The stevedore, who was paid by the master of the vessel, was also paid by the 1,000 feet, by the same method of computation; namely, reckoning the dressed lumber seven-eighths of an inch thick as an inch thick. The libelants claim that the dressed lumber should be computed by strictly solid measure, that is, reckoning the dressed boards at their exact measure of seven-eighths of an inch only for the purpose of computing the 25,000 feet required to be received per day.

I do not think the evidence is sufficient to sustain the libelants' contention that the rule of the maritime association requires a delivery of 25,000 feet of dressed lumber one full inch thick, without allowance for dressing. For a long period board measure has been estimated and computed in the rough, that is, in its sawn state before dressing. When afterwards dressed by planing on both edges and on both sides and thereby somewhat reduced in measurement, the long-established custom undoubtedly has been, as between buyer and seller, to compute the measurement in the same way, that is, according to its rough condition, seven-eighths inch dressed boards being thus treated as inch boards. The rules of the maritime association do not state in what way the "feet of lumber" are to be measured or how "board measure" under rule 7 is to be computed. In order to construe either rule 5 or 7 resort must be had to extraneous evidence. The long-established method of computation in the trade as between buyer and seller, or consignor and consignee, should be applied in construing these rules, unless a custom to compute differently is established clearly and beyond doubt. This certainly has not been done in the present case. Previous long-settled customs cannot be disturbed by new meanings given to current phrases, except by very convincing testimony. The burden of proof is upon the party alleging the change. Macy v. Perry, 91 Fed. 671.

As a vessel in making up a full cargo can carry about one-seventh more in number of dressed boards than of boards undressed, it is evident that she can afford to carry dressed boards at a less freight. That is, therefore, a proper subject to be regulated in fixing the rate of freight in the bill of lading; and that was obviously the purpose of the clause "one-fifth off" in the present case.

Any such special stipulation by the parties in the bill of lading cannot extend to the construction of the rules of the maritime association, except upon clear evidence that it was so intended. These bills of lading make no reference to those rules, nor to the mode of computing the lay days or the rate of discharge required. The maritime rules should therefore be interpreted according to the long and well-settled custom in determining "board measure," or in computing the "feet of lumber," which, as I have said, in the case of dressed boards is computed in the rough, without allowance for any short measure arising merely from dressing.

2. The bill of lading for delivery of boards at Yonkers required delivery at a different place from those delivered at New York. It was an independent contract, and I think under rule 4 of the maritime asso-

ciation the consignee was entitled to a full calendar day after the vessel reported at Yonkers. There were also one or two working days in which the stevedore employed by the schooner refused to work on account of rain, so that the vessel was not "ready to discharge" under rule 5 on those days. Making these deductions and the Sundays, I do not find that the vessel was detained beyond the lay days allowed by the rules of the maritime association, as above construed.

The claim for demurrage is, therefore, disallowed; the claim for freight is allowed, namely, $47.45, with interest from October 22, 1898.