### SMITH v. ROBERT R. SIZER & CO.

(District Court, S. D. New York. January 31, 1905.)

SHIPPING—DEMURRAGE ON LUMBER CARGO—RULES OF NEW YORK MARITIME ASSOCIATION.

A charter party for the carriage of a cargo of lumber from a southern port to New York, providing that the lay days for discharging should be "as customary," *held* not to make rule 7 of the New York Maritime Association rules applicable in the computation of demurrage, in the absence of any reference thereto, and especially in view of the uncertainty as to the meaning of the term "board measure" as employed in the rule.

[Ed. Note.—Demurrage, see notes to Harrison v. Smith, 14 C. C. A. 657; Randall v. Sprague, 21 C. C. A. 337; Hagerman v. Norton, 46 C. C. A. 4.]

In Admiralty. Suit for balance of freight and demurrage.

Hyland & Zabriskie, for libellant.
Eustace Conway, for respondent.

ADAMS, District Judge. This action was brought by Caleb R. Smith, as master of the schooner May & Anna Beswick, to recover from the corporation of Robert R. Sizer & Company, the sum of $333.44, for an alleged balance of freight and demurrage due on a cargo of lumber, transported from Newberne, North Carolina, to the City of New York. The vessel was loaded at Newberne and sailed thence on or about the 22d day of June, 1904, and was discharged in New York, July 14th by 2 :30 o'clock P. M.

The charter party, dated at New York, the 23d day of May, 1904, provided for the voyage described and further, as follows:

"The said party of the second part doth engage to provide and furnish to the said vessel a full and complete cargo of Kiln Dried rough and/or dressed N. C. Pine Boards under and on deck, and to pay to said party of the first part, or agent, for the use of said vessel during the voyage aforesaid Four Dollars and twenty five cents ($4.25) & free wharfage per thousand feet delivered; one fifth off undressed as customary. * * * It is agreed that the lay days for loading and discharging shall be as follows (if not sooner dispatched) commencing from the time the vessel is ready to receive or discharge

cargo, and notice thereof given to the parties of the second part, or their agents that is to say:—For loading at the rate of at least twenty five thousand feet per day, Sundays and holidays excepted. For discharging as customary. And that for each and every day's detention by default of said party of the second part, or agent, Twenty dollars per day, day by day, shall be paid by said party of the second part, or agent, to the said party of the first part, or agent. The cargo or cargoes to be received and delivered alongside, within reach of the vessel's tackles."

The libellant claims for 2⅔ days' demurrage at shipping port, made up as follows:

"1904

| June | 13 | arrived and reported | 0 |
|---|---|---|---|
| | 14 | | 1 |
| | 15 | | 1 |
| | 16 | | 1 |
| | 17 | | 1 |
| | 18 | | 1 |
| | 19 | Sunday | 0 |
| | 20 | Time up at expiration of ⅓ of day | 1 |
| | | Overplus for demurrage | ⅔ |
| | 21 | | 1 |
| | 22 | | 1 |
| | | Demurrage at shipping port | 2⅔ days" |

There is an additional claim for 3½ days at New York made up as follows:

"1904

| July | 1. | Friday, reporting day, | 0 |
|---|---|---|---|
| " | 2. | Saturday for berth | 0 |
| " | 3. | Sunday | 0 |
| " | 4. | Monday, holiday | 0 |
| " | 5. | Tuesday, | 1 |
| " | 6. | Wednesday, | 1 |
| " | 7. | Thursday, rain 2 to 3:15 P. M. | 1 |
| " | 8. | Friday, rain 7 till 8½ A. M. | 1 |
| " | 9. | Saturday, | 1 |
| " | 10. | Sunday, | 0 |
| " | 11. | Monday, | 1 |
| | | Demurrage to date, | ½ |
| " | 12. | | 1 |
| " | 13. | | 1 |
| " | 14. | | 1 |
| | | Demurrage at New York | 3½" |

The total demurrage claimed is 6⅙ days, amounting to $123.33. There is a balance of freight amounting to $182.53, also charges as follows:

"45c. per M feet for unloading at Harlem on 61,316 feet,     $27.59
And a like charge on an additional amount of 9000 feet,       4.05"

Excluding the last item $4.05, which does not appear in the libel, the total claim amounts to $333.44.

Upon the question of demurrage, the libellant's contention is that the principle which should govern here has been established in Randolph v. Wiley (D. C.) 118 Fed. 77.

The respondent claims:

"1. That an entirely different question is presented by the charter in this case from that presented in the Wiley Harker Company case relied on by libellant, because the terms of the charter are entirely different.

2. That the evidence presented by the libellant,—respondent in that case, being entirely different from that presented in this case, the ruling of the Court on the questions there presented, do not govern the questions presented in this case.

3. That an agreement was made by the Captain for a valuable consideration to him moving, not to charge any demurrage in the port of New York, and therefore, so far as New York is concerned no demurrage can be charged, or if charged, the extra charges which the libellant asks to have paid should be disallowed."

The respondent's third contention with respect to an agreement not to charge demurrage will be considered first. It appears that a question arose about discharging that part of the cargo destined for 129th Street, owing to a dispute as to by whom the handling should be done. The master wished to use his own crew of colored men and the stevedores at the place declined to work with them on account of their being non-union men. It became necessary therefore to pay the stevedores their charge of 50c. per M, and the respondent's agents say that in consideration of one-half, or 25c. per M, being assumed by the respondent, the master of the schooner agreed to charge no demurrage. The master denies that he made any such agreement. It seems that the respondent was desirous of avoiding delay in the discharge of the lumber and in getting it on cars. The vessel's duty would have been satisfied by a delivery on the wharf and the car charge 20c. per M was to be paid by the respondent. The whole cost of discharging by the stevedores was 50c. per M, one half of which charge, 25c. per M, added to the 20c. per M made 45c. per M. I think the master's version of this part of the controversy should be adopted, which excludes any further consideration of the respondent's third contention.

The remaining controversy turns principally upon the question whether the Maritime Association Rules 4, 5 and 7 are to govern and if so, what is their proper construction.

These rules are:

#### "Rule IV.

Consignees shall have one full calendar day (Sundays and legal holidays excepted) after the vessel arrives and the captain or vessel's agent reports, in which to furnish the vessel with a berth where she can discharge. * * *

#### Rule V.

Lay days allowed to consignee for receiving cargo shall be as follows, viz.: One day to furnish berth for vessel as provided in Rule IV, and one running day (Sundays and legal holidays excepted), for each 25,000 feet of lumber 1½ inch and under in thickness, or each 30,000 feet of all other lumber and timber, excepting railroad ties, when entire cargo does not exceed 360,000 feet, or each 35,000 feet of all lumber and timber, excepting railroad ties and lumber 1½ inch thick and under, when entire cargo is in excess of 360,000 feet. The first half of every Saturday, not a full legal holiday, together with the last half or portion known as a half holiday, to count as a lay day. If vessel is ready to discharge cargo in questionable weather, consignee must receive same, but in case of failure of vessel through her fault to discharge the quantities per day as herein provided, consignees shall not be liable for demurrage,

provided they have furnished berth or lighters as provided in Rules III and IV.

After the days herein provided have expired, consignee shall pay demurrage for every running day until vessel finishes discharging.

### Rule VII.

The charge for demurrage for vessel shall be at the rate of fifteen cents (15c.) per day per thousand feet board measure of entire cargo delivered. All fractions of a day, over one-half, shall be paid for as a full day, and one-half of a day or less be paid for as one-half of a day."

The rules have been the subject of consideration by this court in Bowen v. Sizer, 93 Fed. 227, and in Randolph v. Wiley, 118 Fed. 77. Each case proceeded upon its own facts and the libellant is mistaken in assuming that the latter did, or was intended to, overrule the former, concerning the construction to be given to Rule 7. That rule was there expressly excluded from consideration. In all these disputes the trouble is that the facts vary so much that no general rule applicable to all cases can be adopted. As was said in Bowen v. Sizer:

"The rules of the maritime association do not state in what way 'feet of lumber' are to be measured or how 'board measure' under Rule 7 is to be computed."

In this case the testimony shows that the application of Rule 7 to demurrage, while freight is to be paid under Rules 4 and 5, would apparently be unreasonable. The theory advanced by the respondent is that it matters not how thick the lumber may be (up to 1½ inch), it will be counted, if 1 inch or less at 1 inch, so that ½ inch lumber would be computed the same as 1 inch. It is said that 1 inch or under is called board measure, so that 300,000 cut in lengths of ½ inch thickness, would be 300,000 for freight purposes and 600,000 for discharging purposes and that 15c. per M under Rule 7, would be proper notwithstanding the computation yielded the vessel for demurrage only half of the quantity she actually transported. An agreement to such effect would be enforced, but it obviously would have to clearly appear what the contracting parties intended in order to secure such result. Here, while doubtless the respondent has heretofore often, if not always, secured such results in settling, it does not appear clearly enough, in the face of conflicting testimony, that the parties intended to abide by the rule involved as to warrant the court in enforcing it. Much of what was said in Randolph v. Wiley on the general principles, which govern the court in a matter of this kind, could be repeated here with advantage. There is no reference to the Maritime Exchange Rules in the contract and they can only be considered by virtue of a stipulation which provides

"that the printed rules of the Maritime Association of the Port of New York for shipment of Southern Yellow Pine Lumber may be submitted to the Trial Justice herein and be marked as an exhibit in this case."

Such a stipulation is obviously not equivalent to such an agreement as would be enforced as the contract of the parties. But even in the event of the rules being unquestionably intended to govern, it would still remain uncertain what "board measure" meant. That has been the subject of conflicting testimony heretofore and doubtless will be so in such

disputes as may hereafter be the causes of litgation, unless provision be made in the contracts to avoid any uncertainty as to what was intended. A matter of this kind in an important trade should be made so plain that no doubt can remain as to. what the contracting parties designed.

Decree for the libellant for $333.44, with interest.